Madam Clerk, please call the next case. Number 15, 2355, Mardy v. Mark Hagan May it please the Court, my name is Megan Reed from Chilton, Yamba, and Porter, and I represent the appellant, Mardy, Inc., in this case. This matter comes before you on my client's appeal of an order of Judge Lopez-Sapiro, which summarily adopted the decisions of the Illinois Workers' Compensation Commission in their entirety. I say decisions because this case did not merely proceed on the typical appeal trajectory of arbitration, commission review, circuit court review, and then to your review. I think we would agree with that assessment, to say the least. Well, Your Honor, this matter has shuffled back and forth between the Commission and the Circuit Court multiple times on two separate orders from Judge Lopez-Sapiro asking the Commission to give further credibility on determinations and explain the weight they were affording to all of the evidence. Why do I think that's significant? Well, Judge Lopez-Sapiro was not initially convinced that the Commission considered all of the credible evidence in its decisions. It's worth noting that the Commission reversed the findings of Arbitrator Lammy, who expressly found that Dr. Michael and Mr. Hagan had lacked credibility. Arbitrator Lammy awarded benefits, but only until November 5th of 2009. That was the date when Mr. Hagan was released from care by the physicians at Parkview Orthopedics. The Commission, however, found Dr. Michael and Mr. Hagan to be the most credible. The Commission did not state that any of the evidence in the record was not credible, but only discussed Dr. Michael's opinions and Mr. Hagan's testimony in its decision reversing the arbitrator. So where are we going with this? You're saying that you were prejudiced by the actions of the Circuit Court. Is that the essence of what you're saying? Well, I think it's pretty – or I'm not aware of any other circumstances where commissioners are compelled and summoned to come before a Circuit Court judge and to testify in favor of their decisions. I think you have a point there. Setting aside that unusual history, don't we still review the decision of the Commission that the Commission ends up with? Are we going to exalt the unusual procedural posture over the decision and go off on tangents? No, and thankfully you don't have to give any deference to the Circuit Court's findings. And what I'm asking this Court to do is what we had wanted the Circuit Court to do in the first place, which is to give an impartial reading of all of the evidence that was submitted at trial. We will. All right, I hope so. And since no evidence was deemed by the Commission not to be credible, I think all of it deserves some consideration in your review of the case. Let's focus on the issues that you've raised. Apparently, you're going to argue that the Commission erred in rejecting the opinion of Dr. Fartin and federating the opinion of Dr. Michael, correct? Correct, Your Honor. So why can't they do that? Why can't the Commission do that? Yeah. I think they can, but in this case, Dr. Michael's opinion is a clear outlier when you look at the totality of the evidence. Dr. Michael has diagnosed Mr. Hagan with a herniation at L4-5 and a left-sided annular tear at L5-S1. Now, this diagnosis is based almost entirely on a discogram and a post-discogram CT scan. Dr. Michael testified that his physical examination of Mr. Hagan was essentially normal. He did not document any physical examination abnormalities on any subsequent examinations. He testified that an MRI of the lumbar spine was pristine. He testified that he never reviewed any of Mr. Hagan's prior medical records, but he acknowledged that he was not the first doctor that treated him after the work accident. What about the Commission's decision in weighing Dr. Michael's opinion over Dr. Fardin? The Commission felt that the greater discussion of the diagnostic testing included in Dr. Michael's discussion persuaded it to give it more weight than Dr. Fardin. What's your reaction to that? Both Dr. Michael and Dr. Fardin reviewed the same diagnostic evidence. And Dr. Fardin, when he was asked to testify, he said that the findings on the post-discogram CT scan, which would be on the left side at L5-S1, would not count for his subjective complaints, which have always been either mid-back or upper lumbar back pain or right-sided leg pain, which both Dr. Fardin and the neurologist, Dr. Glantz, said was not in a radicular pattern. It was more in a non-dermatomal pattern, which would not be stemming from the back. Dr. Glantz suspected that there might be an unrelated migraine phenomenon that might explain his symptoms in the right leg. But certainly it is medical literature and comment in the medical field that we understand that impingements on the left side of the spine would correlate with findings in the left extremities. And impingements on the right side of the spine may correlate with impingements on the right side of the body. And Dr. Fardin said that there is no way that an impingement on the left side of L5-S1 would explain any findings in the right leg. So if this fusion surgery that's recommended by Dr. Michael is to proceed, then we must assume that it's only for back pain, which Petitioner and Mr. Hagan has routinely throughout the course of this case reported as mid-back or central back pain, or possibly upper lumbar pain. In fact, at the arbitration hearing, arbitrator Lamme asked him to point to the area of his back where his back pain was, and he pointed to an area above the belt line going up. In his decision, the arbitrator indicated that this was not the area of the back where Dr. Michael was proposing surgery. The only arbitrator Lamme had the benefit of actually observing Mr. Hagan demonstrate the area where his back pain was. The commission said that they didn't think that that was significant because Mr. Hagan had testified at trial that he had never taken a course in anatomy. And I would ask this court to consider that pointing to the area of your body where you have pain is something that we can ask any child to do. And Mr. Hagan would certainly have been capable of pointing to demonstrate the area where his pain source was. He had been asked to do that by Dr. Glanz, and Dr. Glanz's records indicate that he pointed to his mid-back as well, so that's consistent. So that's not, the mid-back can't be the lumbar region? Is that your point? Well, the area for that they want to do surgery at is L4-5 and L5-S1, which would be the very lower part of your lumbar spine. So that if he was pointing to that area as the pain generator for his back pain, we would suspect that it would be below the belt. Now, the commission, they and counsel will indicate that this is a young gentleman. It's entirely possible that he wore his pants low and his belt was low. So we're going to take judicial notice of that? Well, since arbitrator Lenny was the only one that got to observe him, I think that it's fair to say that if his pants were hung low and he felt that it encompassed L4-L5, he would have noted that in his decision, and that there should be some deference to the finding that he was able to make at court at the hearing, visually that the commission did not have the benefit of. Forgetting about the pants, let's talk about something objective here for a second. Sure, sure. You argued that the arbitrator correctly determined that the record was void of any evidence of complaints of the lumbar pain prior to the claimant treating with Dr. Michael, correct? Did you make that argument? I think I conceded that there was some mention of lumbar pain in the records at Concentra. Dr. McKnight's notes did reference that, right? By the third visit, he does mention lumbar pain, but it is still always a diagnosis of a soft tissue injury. And I do think it's important to note that the physicians that he saw at Concentra, including Dr. McKnight, as well as Dr. Glantz and Dr. McHale at Parkview Orthopedics, all noted a very particular history where he reported that when he was pressed against the wall, the hook of his back brace pressed into his back in the mid-back. And that was the area of his spine where most of the treatment has concentrated, and it would be consistent with where he pointed to at the arbitration hearing as far as the area of his back that was symptomatic as of that date as well. So if you're going to sum up, tell us succinctly, why is the commission's decision against the manifest way of the evidence? Just in summation, the commission did not give any weight to the decisions of Concentra. Concentra found that Mr. Hagan had sustained only a soft tissue injury that had resolved by mid-September of 2009. The doctors that he treated with at Parkview Orthopedics also found that he had sustained a soft tissue injury that had resolved by November 5th of 2009. Dr. Farnan, the IME doctor, and the only physician of those that testified by way of evidence deposition to introduce a CV documenting his peer-reviewed journal articles, testified that he also thought that based on the history and his review of all of the medical records, which Dr. Michael did not review, he believed that from the work injury he also sustained just a soft tissue injury and would have reached maximum medical improvement by November of 2009. For those reasons, we think that arbitrator Lamy's decision is supported by the manifest way of the evidence. We would ask that this court reverse the findings of the commission and reinstate the decision of arbitrator Lamy, striking any award for temporary total disability or medical accident. Thank you, counsel. Counsel, you may respond. My name is Joseph Scrementi. I represent Mark Hagan, the defendant's athlete in this matter. Now, unfortunately, I was not around for the circus that went on in the circuit court where it was remanded and then back and then remanded and then back and then back. And I think, as your Honor has touched on, I'm not exactly sure what the prejudice is or exactly what the appellant is asking for. I don't think you have to worry about it. It's a red herring, I think. It is unusual, I think we probably agree, but ultimately we still have to deal with the commission's decision on its merits. Right. Don't get sidetracked by that. Thank you. So with respect to the commission's decision, and as it was pointed out, the commission looked at all the evidence and he found that really almost immediately after the accident when he started, when Mr. Hagan started treating at Concentra, he was already making complaints of lumbar pain as well as thoracic pain. And he was diagnosed with, I mean, they diagnosed him with a contusion, but it was a lumbar contusion and thoracic sprain strain. Now, Mr. Hagan continued to treat there. He went to Advocate Medical ER where he told those doctors he felt his pain complaints weren't being taken seriously by the company doctors, which I think is something that needs to be taken into consideration. When, if you're only looking at Concentra's records or their diagnoses where they may have only said the lumbar contusion or only a thoracic strain, Mr. Hagan, by telling the doctors at Advocate Medical that his complaints weren't taken seriously by his company doctors kind of brings into a bad light whether or not you should put more weight or less weight to Concentra's medical records. At Advocate Medical, he was complaining of mid-back, low-back pain, and he was actually diagnosed with lumbar radiculopathy. What evidence supports the commission's decision? Specifically, what evidence supports that? His complaints to Concentra immediately, maybe not the first day, but the second day that he treated there, which was August 14, 2009, five days after the accident. Complaining of low-back pain as well as mid-back pain. His continued complaints to Concentra of low-back as well as mid-back pain. His complaints to Dr. McHale at Parkview Orthopedics that included low-back pain as well as mid-back pain. His complaints to Advocate Medical or Advocate ER of low-back pain as well as mid-back pain. And was there a causal connection opinion given in this case by Dr. McHale? There was no causal connection. Dr. Farden and Dr. Michael were the only doctors that gave causal connection opinions. Dr. Farden was the Section 12 independent medical examiner. Dr. Michael was a treating physician who saw Mr. Hagen in November and admitted at first he kind of overlooked these lumbar complaints because the MRI didn't seem to show much. But ultimately, did Michael give a causal connection opinion? He did. He said it was because of the accident. He relied on not only the MRI, but Discograms, which he did at multiple levels as he testified, kind of a control. If you get nothing at L1, L2, L3, L4, but you get pain complaints at L4, L5, L5, S1, you know that that's actually where the pain is coming from. While we're talking about that, what do you make of her argument as to what the claimant pointed as something that detracts from the validity of his complaints? I wish that it would have been explained a little better than just above the beltline, because technically the mid-back is above the beltline, but so is the lumbar spine, depending on where he was wearing his pants. I'm not saying that he was sagging them, but I mean, if anybody's wearing their pants at normal height, the lumbar spine is still above the beltline. So you're saying that's much to do about nothing, basically, is that what you're saying? I'm not saying it's much to do about nothing. I just wish that it was a little more specific. Instead of saying above the beltline, I think it could have easily just been said he's pointing to the middle of his back. All right, so you're going to have to argue it doesn't under affect the validity of your testimony. No, I think the fact that he threw in the beltline kind of would lend credence to the fact that it is still the lumbar spine and not just the thoracic spine, which would be the middle of the back. But again, unfortunately, none of us were there to see where he actually pointed. The commission, after taking all the testimony under consideration, found that not only was Mr. Hagan's testimony credible and consistent with the medical records where he said he was making complaints of low back pain as well as mid-back pain, was credible, and Dr. Michael's testimony as a treating physician was credible. It's more credible than Dr. Farden, who's the only other doctor who gave a causation opinion. The commission is very well able to do that. So you're saying there's sufficient evidence in the records to support the decision. Is that what you're saying? In so many words, yes. And because the commissioner or the commission was in the best position to look at it, look through all the evidence, their finding is not against the manifest way to the evidence for causation. And therefore, TTD, the treatment that was actually done afterwards, as well as prospective medical treatment, would all be reasonable and necessary, and it's not against the manifest way to the evidence. And I think I would just be talking for another five more minutes saying the same thing over and over again. So if there's no more questions... The appellee would just ask that this court uphold the commissioner's finding, as well as the circuit court's finding, that there is a causal connection between the lumbar spine and that it's not against the manifest way to the evidence. Thank you. Thank you, counsel. Counsel, you may reply. Just quickly, Your Honors, I disagree with the conclusion that only two doctors give causation opinions in this case. There are causation opinions that are contained within the medical records of the doctors that Mr. Hagan treated with at Concentra Medical Center, as well as the doctors that he treated with at Parkview Orthopedics, including Dr. McHale and Dr. Glantz. Those physicians all give opinions regarding diagnosis for the work injury and the extent to which the work injury was caused. Dr. Glantz also gives a specific opinion that the right leg symptoms that Mr. Hagan reported were not stemming from the back and related to some other cause, because it was in a non-physiological pattern. Those are all opinions regarding causation that are contained within the medical records, even though those doctors were not asked to testify in evidence depositions. And we believe that considering all of the evidence in the record, the commission's decision finding that Mark Hagan met his burden of proof by a preponderance of the evidence, meaning more likely than not that the treatment recommended by Dr. McHale is related to an August 10, 2009 work accident, is not supported by the majority of the medical evidence. So we ask that you would reverse the findings of the commission and Green State Arbitrators' decision and not award any medical treatment or TTD after November 15th. Thank you.